**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**EMIGDIO OJEDA FERREIRA,**
**ERICK JOSE GUZMAN SANCHEZ,**
**OSCAR LEONARDO RAMÍREZ NAVARRO,**
**RAFAEL SAAVEDRA ROLON,**
**EMIGDIO JAVIER VERA,**
**CHRISTIAN RODRIGO QUINTANA GRANCE,**
**CARLOS M VELASCO YAMASQUI,**
**FRANCISCO FERREIRA, and**
**HERNAN FLORES,**
**individually and on behalf of others similarly situated,**

**Plaintiffs,**

**v.**

**RBE LLC d/b/a REMODELING BY ERIK, J&M ELITE CONTRACTING CORP., ERIK SIMPSON, and JORGE VAZQUEZ,**

**Defendants.**

**Case No.: __________**

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## COMPLAINT

The Plaintiffs identified below, individually and on behalf of other similarly situated employees under the Fair Labor Standards Act ("FLSA"), by and through their attorneys, bring this action against RBE LLC d/b/a Remodeling by Erik, J&M Elite Contracting Corp., Erik Simpson, and Jorge Vazquez, and allege as follows:

## INTRODUCTION

1. Plaintiffs are nine workers whom Defendants employed in their construction and remodeling business.

2. They seek unpaid compensation arising from Defendants' assignment of work without timely payment of the promised wages and legally required overtime.

3. This case asserts minimum-wage and overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., Virginia wage claims for work performed in Virginia, Flores' wage-payment claim for work performed in New Hampshire, and independent claims for promised compensation and recoverable project expenditures.

4. Ojeda Ferreira, Sanchez, Navarro, Rolon, Vera, Grance, Yamasqui, and Francisco Ferreira are referred to collectively as the "Group Plaintiffs."

5. The Group Plaintiffs and Flores are collectively referred to as "Plaintiffs," all nine of whom are named parties to this action.

6. Each seeks his own unpaid compensation, calculated from his actual work, agreed pay, and payments received.

7. Defendants used common construction assignments and overlapping supervisory and payment arrangements.

8. Several Plaintiffs continued working for weeks without any wages.

9. Flores received sporadic partial payments, but his compensation and project accounts remain unpaid in part.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction over the FLSA claims under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b), as it presents a question of federal law.

11. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims because they arise from the same common nucleus of operative facts concerning employment relationships, work assignments, compensation arrangements, and nonpayment that form the basis of the federal claims.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the employment transactions or wage-payment decisions giving rise to each Plaintiff's claims occurred in Queens County, New York.

13. The Group Plaintiffs performed construction work for Defendants at their Norfolk, Virginia projects during the employment periods alleged below, and seek compensation for that work.

14. J&M Elite Contracting Corp. is incorporated in New York. Its listed business address in the parties' correspondence is 5110 67th Street, Woodside, New York 11377, in Queens County.

15. Queens County is within the Eastern District of New York under 28 U.S.C. § 112(c).

16. This Court has personal jurisdiction over J&M Elite Contracting Corp. under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") and New York CPLR § 301 because J&M is incorporated in New York.

17. This Court has personal jurisdiction over RBE, Simpson, and Vazquez under Rule 4(k)(1)(A) and New York CPLR 302(a)(1) because each, personally or through an authorized agent, purposefully transacted employment-related business in New York from which the claims arise.

18. The named Plaintiffs join under Rule 20(a)(1) and pursuant to 29 U.S.C. § 216(b).

19. Their claims arise from a related series of construction assignments and failures to pay workers in the same remodeling operation, involving common supervisors, overlapping employment periods, projects, and common payment practices.

20. Common issues include the identity of their employers and the legality of those practices. Each Plaintiff seeks the relief supported by his individual circumstances.

**PARTIES**

21. Plaintiff Emigdio Ojeda Ferreira ("Ojeda Ferreira") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

22. Plaintiff Erick Jose Guzman Sanchez ("Sanchez") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

23. Plaintiff Oscar Leonardo Ramírez Navarro ("Navarro") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

24. Plaintiff Rafael Saavedra Rolon ("Rolon") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

25. Plaintiff Emigdio Javier Vera ("Vera") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

26. Plaintiff Christian Rodrigo Quintana Grance ("Grance") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

27. Plaintiff Carlos M Velasco Yamasqui ("Yamasqui") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

28. Plaintiff Francisco Ferreira ("Francisco Ferreira") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

29. Plaintiff Hernan Flores ("Flores") is an individual who worked in Defendants' construction and remodeling operation during the period and under the compensation arrangement alleged below.

30. Defendant RBE LLC, doing business as Remodeling by Erik ("RBE"), operated the construction and remodeling business that employed Plaintiffs.

31. Upon information and belief, it maintained a business address at 104 Old Eastwood Road, Wilmington, North Carolina 28403.

32. Defendant J&M Elite Contracting Corp. ("J&M") is a New York domestic business corporation incorporated on October 14, 2020, under Department of State identification number 5857052, with Queens listed as its county.

33. J&M was identified in the parties' pre-suit correspondence as the contracting business associated with Vazquez that supplied or employed workers on RBE's remodeling projects; its listed business address was 5110 67th Street, Woodside, New York 11377.

34. Upon information and belief, Vazquez owned and operated J&M and acted on its behalf in arranging construction labor, communicating assignments, and administering the compensation at issue.

35. Upon information and belief, J&M participated through Vazquez in employing the construction crew whose work RBE and Simpson directed and accepted.

36. Plaintiffs allege that J&M was a joint employer with the other Defendants under the actual working and payment arrangements described below.

37. Defendant Erik Simpson ("Simpson") directed and controlled RBE's construction operations.

38. He exercised authority over the hiring or retention of workers, their assignments and schedules, their promised pay, and the funds used to compensate them.

39. He personally made compensation commitments to members of the crew and exercised termination authority over Francisco Ferreira.

40. Defendant Jorge Vazquez ("Vazquez") acted as a supervisor and payment intermediary in the remodeling operation and, upon information and belief, as the owner and operator of J&M.

41. He communicated work assignments, dealt with workers concerning unpaid compensation, and participated in payment decisions or their implementation.

42. He directly assigned Flores to projects and transmitted the documented payments to Flores from accounts bearing his name.

43. RBE, J&M, Simpson, and Vazquez are collectively referred to as "Defendants."

44. RBE and J&M are referred to as the "Corporate Defendants," and Simpson and Vazquez as the "Individual Defendants."

45. Upon information and belief, RBE and Simpson directed the remodeling projects and controlled work schedules, compensation terms, and the continued use of the crew's labor.

46. Meanwhile, at RBE and Simpson's direction, J&M and Vazquez supplied or administered that labor and participated in assignments and wage payments.

47. Plaintiffs performed the painting, carpentry, repairs, and related construction services integral to those projects under the direction of Simpson or Vazquez.

48. Their work benefited the Corporate Defendants' performance of the remodeling assignments.

49. Upon information and belief, Vazquez acted for J&M in arranging and paying for Flores' work, as well as in the crew arrangement concerning the Group Plaintiffs.

50. Flores pleads J&M's role in the alternative to his direct employment by RBE, Simpson, and Vazquez.

51. The alleged joint employment rests on Defendants' actual authority over the workers and their exercise of control over assignments, schedules, compensation, and the acceptance of labor.

52. Each Defendant is liable only for the Plaintiffs and periods for which the applicable employment standard is satisfied.

53. Plaintiffs alternatively allege under Rule 8(d) that J&M was the contracting employer and that RBE and Simpson were additional employers through their operational control; identifying J&M as a subcontractor or payroll intermediary did not discharge any other Defendant's own statutory wage obligations.

**EMPLOYMENT AND COVERAGE**

54. Plaintiffs supplied labor integral to Defendants' construction and remodeling business.

55. Defendants selected the projects, directed the work and schedules, set or approved the compensation, and controlled whether the workers were paid.

56. The painter and carpenter Plaintiffs performed manual construction work.

57. Flores performed manual repairs and remodeling and also recruited or coordinated helpers.

58. Francisco Ferreira similarly performed manual labor.

59. Plaintiffs allege that their actual employment arrangements were covered and nonexempt.

60. Upon information and belief, RBE's annual gross volume of sales made or business done was at least $500,000.00 during the relevant period.

61. Its operations included multiple construction projects, work in more than one state, and deployment of multiple workers.

62. Its financial and project records are within Defendants' possession.

63. Employees in the remodeling operation handled or otherwise worked on construction materials, tools, equipment, and supplies that had moved in interstate commerce. RBE was an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

64. Plaintiffs' labor on RBE's projects was part of that covered enterprise.

65. J&M is alleged to have directly or jointly employed Plaintiffs in that work; its liability is based on its employment role in the covered work.

66. RBE, J&M, Simpson, and Vazquez suffered or permitted Plaintiffs to work as employees within the meaning of 29 U.S.C. § 203, through the respective roles alleged above.

67. Plaintiffs depended on those employment arrangements for their assignments and compensation and did not operate independent businesses in carrying them out.

## FACTUAL ALLEGATIONS

### A. Emigdio Ojeda Ferreira

68. Ojeda Ferreira worked as a painter from approximately September 1, 2024 through January 16, 2025.

69. He was promised $220.00 per day.

70. His ordinary schedule was Monday through Friday, approximately 8:00 a.m. to 4:00 p.m.

71. Beginning approximately December 1, 2024, he was directed to work seven days per week on that schedule.

72. Defendants paid him for the earlier period but paid no wages for his work from approximately December 1, 2024 through January 16, 2025.

73. A full seven-day week on the reported schedule included approximately 52.5 hours after a half-hour daily meal deduction, including approximately 12.5 hours over forty.

74. During January 12–16, he also performed at least eight additional hours of work after 4:00 p.m. over that period, for which he was not paid.

75. Ojeda Ferreira also incurred expenses associated with Defendants' projects, including repairs to a company vehicle and travel between New York and Virginia.

76. He seeks reimbursement only for expenditures that were authorized, promised, or otherwise legally recoverable, separate from his statutory wage damages.

### B. Erick Jose Guzman Sanchez

77. Sanchez worked as a painter from approximately September 1, 2024 through January 16, 2025.

78. Defendants promised him $1,100.00 per week.

79. His ordinary schedule was Monday through Friday, approximately 8:00 a.m. to 4:00 p.m.

80. From approximately December 6, 2024 through January 16, 2025, he worked seven days per week on that schedule and received no wages.

81. A full seven-day week included approximately 52.5 hours, including approximately 12.5 overtime hours.

82. During January 12–16, 2025, Sanchez also performed at least eight additional hours of work after 4:00 p.m. over that period without pay.

83. Defendants did not pay the required compensation for the overtime hours or the promised weekly compensation for the unpaid periods.

**C. Oscar Leonardo Ramírez Navarro**

84. Navarro worked as a carpenter from approximately November 2, 2024 through January 16, 2025.

85. He was promised $220.00 per day.

86. He worked Monday through Sunday, approximately 8:00 a.m. to 4:00 p.m.

87. A full week included approximately 52.5 hours after that deduction, including approximately 12.5 hours over forty.

88. Defendants paid his base compensation during the earlier portion of the employment but failed to pay the overtime premium required for weeks exceeding forty hours.

89. From approximately December 8, 2024 through January 16, 2025, they paid him no wages.

90. Navarro seeks both unpaid base wages and the overtime compensation legally due, with credit for all payments actually received.

**D. Rafael Saavedra Rolon**

91. Rolon worked as a painter from approximately November 12, 2024 through January 10, 2025.

92. He was promised $220.00 per day.

93. His ordinary schedule was Monday through Friday, approximately 8:00 a.m. to 4:00 p.m.

94. During the unpaid period beginning approximately December 2, 2024, his schedule increased to seven days per week, approximately 8:00 a.m. to 4:00 p.m.

95. Defendants paid no wages for his work from approximately December 2, 2024 through January 10, 2025.

96. The full seven-day periods of December 2–8, December 9–15, December 16–22, December 23–29, and December 30, 2024–January 5, 2025 included approximately 52.5 hours with approximately 12.5 hours over forty.

97. Simpson also promised reimbursement of Rolon's $210 bus fare incurred for the employment assignment; that promised reimbursement remains unpaid.

**E. Emigdio Javier Vera**

98. Vera worked as a painter from approximately November 12, 2024 through January 10, 2025.

99. He was promised $220.00 per day.

100. His ordinary schedule was Monday through Friday, approximately 8:00 a.m. to 4:00 p.m.

101. During the unpaid period beginning approximately December 2, 2024, his schedule increased to seven days per week, approximately 8:00 a.m. to 4:00 p.m.

102. Defendants paid no wages for his work from approximately December 2, 2024 through January 10, 2025.

103. The full seven-day periods of December 2–8, December 9–15, December 16–22, December 23–29, and December 30, 2024–January 5, 2025 included approximately 52.5 hours after the reported meal deduction, with approximately 12.5 hours over forty.

104. Simpson also promised reimbursement of Vera's $210 bus fare incurred for the employment assignment; that promised reimbursement remains unpaid.

**F. Christian Rodrigo Quintana Grance**

105. Grance worked as a painter from approximately December 1, 2024 through January 8, 2025 at an agreed rate of $25.00 per hour.

106. He worked every day during that period.

107. His reported schedule was approximately 8:00 a.m. to 4:00 p.m., seven days per week.

108. This schedule comprised approximately fifty-six (56) hours, and would still exceed forty hours by approximately 12.5 hours even allowing a half-hour meal deduction each day.

109. Defendants paid Grance no wages for the entire employment period.

110. He was not paid either his agreed hourly compensation or the required overtime compensation.

**G. Carlos M Velasco Yamasqui**

111. Yamasqui worked as a painter from approximately November 15, 2024 through January 16, 2025.

112. He was promised $220.00 per day.

113. His ordinary schedule was Monday through Friday, approximately 8:00 a.m. to 4:00 p.m.

114. From approximately December 1, 2024 through the end of his employment, he worked seven days per week on that schedule.

115. Defendants paid Yamasqui no wages for the entire employment period.

116. A full seven-day week included approximately 52.5 hours after the reported meal deduction, including approximately 12.5 hours over forty.

**H. Francisco Ferreira**

117. Francisco Ferreira worked for the remodeling business as a supervisor from approximately September 1, 2024 through April 5 or 6, 2025.

118. His agreed compensation was $1,400 per week.

119. His reported schedule was Monday through Friday, approximately 8:00 a.m. to 5:00 p.m., totaling forty-five (45) scheduled hours.

120. He alleges that he worked more than forty (40) compensable hours in workweeks on that schedule and did not receive the legally required overtime compensation.

121. Defendants did not pay the agreed $1,400 for Francisco Ferreira's first workweek.

122. He also experienced underpayment during the employment.

123. On approximately April 5, 2025, Simpson learned that Francisco Ferreira was related to Ojeda Ferreira, said he no longer wanted Francisco Ferreira at the workplace, and terminated his employment.

124. The unpaid compensation remained due notwithstanding that termination.

## I. Hernan Flores

125. Flores worked for the remodeling business from approximately August 8, 2024 through September 20, 2024.

126. His work included manual repairs and remodeling at projects assigned through Vazquez, including projects in Concord, New Hampshire and Norfolk, Virginia.

127. Defendants, acting through Vazquez, agreed to pay Flores for his labor.

128. Flores understood his hourly rate to be approximately $33.00.

129. His contemporaneous accounts also identify day- or week-based amounts for particular assignments, including $220.00 per day and $1,320 or $1,450 for six-day periods.

130. Flores ordinarily worked Monday through Saturday, approximately 7:00 a.m. to 5:00 p.m.

131. That schedule comprised approximately fifty-seven (57) hours per full week, including approximately seventeen (17) overtime hours.

132. He did not receive timely payment of all wages and overtime due for these assignments.

133. Flores stopped working after September 20, 2024 because the compensation remained unpaid.

134. Defendants' distant project assignments also required travel.

135. Flores seeks compensation for travel only insofar as it qualified as work under the applicable regulations, including qualifying travel during the workday or an overnight assignment.

136. Flores recruited additional workers to carry out assigned projects that he could not complete alone.

137. Defendants knew of, permitted, and accepted their work.

138. Flores reports advancing his own funds to those workers: $5,280.00 to a worker known as Gordo, $5,280.00 to Delvin, and $2,520.00 to Flavio, totaling $13,080.00.

139. Flores made these personal advances expecting repayment in connection with the accepted project work.

140. Defendants have not fully reimbursed him.

141. Flores also incurred fuel, tolls, and other project expenses.

142. Recovery of such expenditures is sought only to the extent supported by an enforceable promise or applicable restitution principles, and any FLSA wage shortfall is determined separately under the governing expense rules.

143. The documented payments from Vazquez to Flores were $760.00 on August 10, 2024; $150.00 on September 15; $1,000.00 on September 18; $1,200.00 on September 24; and $850.00 on December 4.

144. These five payments total $3,960.00.

145. Flores repeatedly demanded payment in full for his labor.

146. In a September 29, 2024 exchange, Vazquez attributed the delay to an unpaid check and an insurance issue.

147. In November 24 and December 21 exchanges, he again referred to expected funds or a check while the accounts remained unpaid.

148. Flores seeks the unpaid wages and recoverable expenditures established by the evidence after proper credits.

## COMMON PAYMENT PRACTICES AND RESULTING HARM

149. The Corporate Defendants, acting through Simpson and Vazquez, knew the projects assigned, the schedules required, and the work being performed.

150. They nevertheless permitted workers to continue laboring during periods when no wages were paid or compensation was incomplete.

151. Defendants failed to pay an overtime premium required by law when Plaintiffs worked more than forty compensable hours in a workweek.

152. RBE and J&M, through their respective managers and payment arrangements, have not provided a complete and accurate accounting of each Plaintiff's hours, applicable rate, overtime calculation, pay periods, and payment allocations.

153. Plaintiffs complained of nonpayment and sought the outstanding wages.

154. The Group Plaintiffs pursued payment through counsel beginning in 2025, and Flores repeatedly sought payment directly.

155. Defendants did not fully cure the unpaid balances.

156. Defendants' knowledge of the assigned work, control over payment, continued use of uncompensated labor, and failure to pay after repeated demands support the allegation that their FLSA violations were willful and their wage withholding was knowing.

157. Plaintiffs seek the three-year FLSA period to the extent willfulness is established under 29 U.S.C. § 255(a).

158. Each Plaintiff suffered economic injury from his own unpaid compensation or recoverable expenditures.

## FLSA COLLECTIVE ACTION ALLEGATIONS

159. Plaintiffs bring their FLSA claims individually and under 29 U.S.C. § 216(b) for similarly situated employees who elect to join by filing written consents.

160. The proposed collective comprises nonexempt construction and remodeling employees in Defendants' operation who, within the applicable limitations period, worked under the common assignment and payment practices described here and were denied timely minimum wages or required overtime compensation.

161. The common issues include whether RBE and J&M directly or jointly employed the workers; Simpson's and Vazquez's control over assignments and payroll; and the failure to pay timely wages and required overtime. Individual differences in dates, rates, and damages can be addressed through payroll and work records and, where appropriate, subclasses or separate treatment.

162. Plaintiffs will seek appropriate court-authorized notice upon the required showing that other employees are similarly situated.

163. No absent worker is alleged to have joined merely because he worked on a project, and no written consent is represented as already filed.

164. The state-law and common-law counts below are asserted for the named Plaintiffs specified in each count.

## CAUSES OF ACTION
## COUNT I
## FAILURE TO PAY MINIMUM WAGES UNDER THE FLSA
## 29 U.S.C. §§ 206 AND 216(b)

165. Plaintiffs incorporate the preceding factual and collective allegations.

166. Each named Plaintiff and any similarly situated employee who properly joins asserts this count against RBE, J&M, Simpson, and Vazquez as his direct or joint employers, based on their respective roles in his covered employment.

167. The FLSA required payment of at least $7.25 per compensable hour, free and clear, when the wages were due.

168. Defendants failed to meet that requirement in workweeks for which no wages or insufficient wages were timely paid.

169. The Group Plaintiffs identify unpaid periods in their individual allegations, including Francisco Ferreira's first workweek and the full seven-day periods identified for the other Group Plaintiffs.

170. Their wages in those unpaid weeks fell below the federal minimum.

171. Flores' records identify full six-day periods beginning August 12, August 19, and August 26, 2024 without a contemporaneous wage payment shown.

172. The only documented payment before September 15 was the August 10 transfer preceding those periods.

173. Later partial payments do not establish that all minimum wages were timely paid.

174. To the extent required expenditures primarily for Defendants' benefit reduced a worker's compensation below the minimum in a particular workweek, the resulting shortfall also violated 29 U.S.C. § 206 and 29 C.F.R. § 531.35.

175. An unreimbursed expense is not automatically a statutory wage violation.

176. Plaintiffs seek unpaid minimum wages, an additional equal amount as liquidated damages as authorized by 29 U.S.C. § 216(b), and reasonable attorneys' fees and costs, with all proper payment credits and subject to the applicable limitations period.

**COUNT II**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**29 U.S.C. §§ 207 AND 216(b)**

177. Plaintiffs incorporate the preceding factual and collective allegations.

178. Each named Plaintiff and any similarly situated employee who properly joins asserts this count against RBE, J&M, Simpson, and Vazquez as his direct or joint employers, based on their respective roles in his covered employment.

179. Plaintiffs worked more than forty (40) compensable hours in the workweeks described above.

180. Defendants knew of, required, or suffered or permitted that work and failed to pay the overtime compensation due.

181. The reported seven-day schedules included approximately 52.5 hours.

182. Flores' full six-day schedule included approximately fifty-seven hours.

183. Francisco Ferreira's claim is based on his compensable hours over forty.

184. Under 29 U.S.C. § 207(a)(1), overtime was payable at not less than one and one-half times each worker's legally determined regular rate.

185. The regular rate must be calculated from the actual hourly, daily, or weekly agreement and compensable hours, including application of 29 C.F.R. § 778.112 where appropriate.

186. An additional one-half-time calculation is appropriate only to the extent straight-time compensation covering those overtime hours was actually paid.

187. Plaintiffs also seek any unpaid straight-time component of the overtime compensation and do not treat unpaid weeks as though the promised base wages had been received.

188. Plaintiffs seek unpaid overtime, an additional equal amount as liquidated damages under 29 U.S.C. § 216(b), and reasonable attorneys' fees and costs, without duplicate recovery of amounts awarded under Count I or another count.

**COUNT III**
**FAILURE TO PAY VIRGINIA WAGES**
**VIRGINIA CODE § 40.1-29**

189. Each named Plaintiff incorporates his factual allegations concerning work performed in Virginia, promised compensation, and nonpayment.

190. This count is limited to Virginia wages and is asserted against RBE, J&M, Simpson, and Vazquez to the extent each was his employer under the applicable statute.

191. Defendants were obligated to establish regular pay periods and timely pay the wages earned for the Virginia work.

192. Defendants failed to pay the Group Plaintiffs the agreed compensation for their unpaid Virginia work periods.

193. They also failed to pay the balance of Flores' wages for his Norfolk assignment.

194. The nonpayment was knowing and willful.

195. Defendants knew the work had been assigned and performed, knew the compensation terms and amounts actually paid, and received demands for the outstanding wages.

196. Plaintiffs allege actual knowledge or, alternatively, deliberate ignorance or reckless disregard of the unpaid wages.

197. Plaintiffs seek unpaid Virginia wages and the remedies authorized by § 40.1-29 as applicable to these claims, including additional equal liquidated damages or, upon the required finding of knowing nonpayment, an award totaling three times the unpaid wages, together with authorized interest, reasonable attorneys' fees, and costs.

**COUNT IV**
**FAILURE TO PAY VIRGINIA OVERTIME**
**VIRGINIA CODE § 40.1-29.2**

198. Each named Plaintiff incorporates his factual allegations concerning covered employment, compensable work exceeding forty hours in Virginia workweeks, and nonpayment.

199. This count is asserted against RBE, J&M, Simpson, and Vazquez to the extent each employed him under the applicable statute.

200. Virginia Code § 40.1-29.2 required payment of overtime using the applicable FLSA standards.

201. Defendants failed to pay the overtime due for the Virginia workweeks described above, including the Group Plaintiffs' overtime weeks and Flores' approximately 7.5 overtime hours during September 16–20, 2024.

202. Plaintiffs seek unpaid Virginia overtime and remedies authorized by §§ 40.1-29 and 40.1-29.2, subject to the required statutory findings and without duplicate recovery of the same wages or overlapping enhancements.

**COUNT V**
**FAILURE TO PAY VIRGINIA MINIMUM WAGES**
**VIRGINIA CODE §§ 40.1-28.10 AND 40.1-28.12**

203. The eight Group Plaintiffs incorporate their factual allegations concerning employment and uncompensated work in Virginia.

204. Those eight Plaintiffs assert this count against RBE, J&M, Simpson, and Vazquez to the extent each was their employer under the applicable law.

205. For covered work, the Virginia minimum wage was $12.00 per hour during 2024 and $12.41 per hour during 2025.

206. The Group Plaintiffs received no wages for the unpaid periods identified above, including Francisco Ferreira's first unpaid workweek, and therefore received less than the applicable Virginia minimum wage for their compensable Virginia work.

207. The Group Plaintiffs seek the resulting minimum-wage deficiencies and the interest, attorneys' fees, and other remedies authorized by the version of the Virginia Minimum Wage Act applicable to these claims, with proper credits and without duplicating recovery under the other wage counts.

**COUNT VI**
**FAILURE TO PAY NEW HAMPSHIRE WAGES**
**N.H. RSA 275:42–44 AND 275:53**

208. Flores alone asserts this count and incorporates his factual allegations concerning the Concord assignment, agreed compensation, and unpaid balances.

209. It is limited to wages earned for work within New Hampshire.

210. Flores performed construction work in Concord during at least August 26–31, 2024 as an employee protected by RSA 275:42.

211. RBE employed Flores for the New Hampshire work.

212. Upon information and belief and in the alternative, J&M also employed Flores through Vazquez's arrangement of his construction labor and compensation.

213. Each Corporate Defendant is liable to the extent it was his employer under RSA 275:42.

214. The Individual Defendants are liable under this count to the extent each qualified as an employer under RSA 275:42, including a qualifying officer or agent responsible for knowingly permitting the nonpayment of wages.

215. RSA 275:43 required timely payment for that work, and RSA 275:44 required payment of wages remaining due following Flores' departure within the applicable statutory period. Defendants failed to pay all wages for the Concord assignment when due and have not fully paid them after proper credits.

216. Defendants knew the assigned work had been performed and the agreed compensation remained unpaid.

217. Their repeated assurances of expected funds, partial payments, and continued nonpayment after demand support the allegation that the withholding was willful and without good cause.

218. Flores seeks unpaid New Hampshire wages, liquidated damages under RSA 275:44(IV) at ten percent of unpaid wages for each qualifying day of nonpayment, excluding Sundays and legal holidays and capped at the unpaid wages, and reasonable attorneys' fees and costs as authorized under RSA 275:53.

**COUNT VII**
**BREACH OF CONTRACT**

219. Each named Plaintiff incorporates his factual allegations concerning promised compensation, performance, and nonpayment.

220. This count rests on contractual obligations independent of the FLSA and is pleaded in the alternative where an enforceable agreement or contracting party is disputed.

221. RBE, through Simpson or Vazquez acting on its behalf, agreed to compensate Plaintiffs under their respective arrangements described above.

222. Alternatively, J&M, through Vazquez acting on its behalf, made or undertook those compensation agreements.

223. Each Plaintiff accepted the applicable agreement by performing the assigned work.

224. The promised compensation included the daily, weekly, or hourly pay applicable to each Plaintiff and the meal allowances specifically promised to Ojeda Ferreira, Navarro, Rolon, Vera, and Yamasqui.

225. Simpson also expressly promised reimbursement of the $210.00 bus fare incurred by Rolon and the $210.00 bus fare incurred by Vera.

226. RBE and, in the alternative, J&M breached the compensation agreements each made or undertook by failing to pay the promised compensation and applicable reimbursements when due.

227. Each affected Plaintiff suffered economic loss from the breach of his agreement.

228. This claim is asserted against RBE and J&M according to the compensation agreements each made or undertook, and jointly only where both were bound.

229. Plaintiffs seek the unpaid amounts due under these independent promises, including compensation above statutory minimum requirements and enforceable reimbursement obligations.

**COUNT VIII**
**UNJUST ENRICHMENT**
**PLEADED IN THE ALTERNATIVE**

230. Plaintiffs incorporate the factual allegations concerning benefits they conferred and plead this count under Rule 8(d) only to the extent no enforceable contract governs the particular benefit or recipient.

231. RBE and, upon information and belief, J&M received the value of Plaintiffs' completed construction work in carrying out their respective project obligations.

232. Flores also financed accepted crew labor and project expenses; Ojeda Ferreira incurred company expenditures; and Rolon and Vera incurred the employment-related travel expenditures described above.

233. Each such Plaintiff seeks restitution from RBE or J&M only for the benefit that corporation actually received and unjustly retained, including an expenditure it avoided through his financing of accepted labor or authorized project costs.

234. Defendants knew of and accepted the work and project benefits under circumstances indicating that Plaintiffs expected payment rather than a gift.

235. Retaining an independently compensable benefit without paying for it would be unjust.

236. Restitution is sought only from a Defendant who actually received a benefit for which recovery is legally warranted.

237. Ownership, supervision, or receipt of a demand alone does not establish that an Individual Defendant personally retained the benefit.

238. The measure is the value of the benefit unjustly retained, subject to proper credits.

**COUNT IX**
***QUANTUM MERUIT***
**PLEADED IN THE ALTERNATIVE**

239. Plaintiffs incorporate their factual allegations concerning requested services and plead this count in the alternative to an enforceable agreement fixing the compensation for those services.

240. RBE, acting through Simpson or Vazquez, requested the repairs, painting, carpentry, remodeling, and project-related services Plaintiffs performed.

241. Upon information and belief and in the alternative, J&M requested those services through Vazquez.

242. Plaintiffs rendered the services expecting payment, and the requesting business accepted and used the work.

243. To the extent an enforceable agreement fixing a price is not established, a Defendant whose request and relationship to the services support an implied-in-fact obligation must pay their reasonable value.

244. Plaintiffs seek the reasonable value of independently compensable requested services remaining unpaid after all proper credits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against RBE LLC d/b/a Remodeling by Erik, J&M Elite Contracting Corp., Erik Simpson, and Jorge Vazquez, according to each Defendant's liability to each Plaintiff and jointly and severally where permitted by law, and request that the Court:

A. Award unpaid minimum wages and overtime compensation under the FLSA, with an additional equal amount as liquidated damages where authorized;

B. Authorize appropriate FLSA collective notice and proceedings upon the required showing and include employees who timely and properly join;

C. Award the named Plaintiffs their unpaid Virginia wages and overtime, with the applicable additional equal damages or treble-total remedy upon the required showing;

D. Award the Group Plaintiffs their Virginia minimum-wage deficiencies and the remedies authorized by the applicable statute;

E. Award Flores his unpaid New Hampshire wages and the capped liquidated damages authorized by RSA 275:44(IV);

F. Award damages for breach of the independent compensation and reimbursement agreements, or appropriate alternative restitution and compensation for requested services;

G. Award prejudgment interest, including the Virginia statutory rate where applicable, and post-judgment interest under 28 U.S.C. § 1961, to the extent permitted without duplicate compensation;

H. Award reasonable attorneys' fees and costs under the FLSA and applicable Virginia and New Hampshire statutes;

I. Apply all payments and recoveries to the obligations they properly satisfy and prevent duplicate recovery of wages, expenses, or overlapping enhancements; and

J. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38, Plaintiffs demand trial by jury on all claims and issues so triable.

Dated: Jamaica, New York
September 17, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: *<u>/s/ Emanuel Kataev, Esq.</u>*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiffs*